Thank you. Good morning, your honors. May it please the court, my name is Douglas Tassin, and I represent the defendant, Appellant Ernesto Cardoza-Fuentes. With the court's permission, I'd like to argue the issues for eight minutes and reserve two minutes for rebuttal. We're here to confront one simple question in this case, and that is whether Mr. Cardoza-Fuentes would have had plausible grounds for relief from deportation at the time he pled guilty to an aggravated felony crime of violence, which was 1991. And the simple answer to that question is yes. And I submit to the court to answer that question in the negative ignores reality. And in support for this position, I'd like to touch upon three areas. One, the reality of immigration court practice during the relevant time period. Two, criminal immigration offenses where the defendant collaterally attacked a prior deportation. And three, the important distinction between civil and criminal immigration law. But let us first turn to the reality. Can I just get clear first what reality we're talking about? I mean, your position is that it would have been plausible at the time to believe that his, what is it, robbery, I think, or whatever he did, would have been considered a crime of moral turpitude and therefore would have been an exclusion? That's correct, Your Honor. And when we look at the practice in immigration court, the reality of practice, we know that to be true. Now the government's position, relying primarily on the original Abebe opinion, the language of which has been essentially reduced to dicta and a footnote in the most recent Abebe opinion, but the government's position is in order for Mr. Cardoso to have had plausible grounds for relief, that the immigration judge would have had to have ignored clearly established precedent on the comparable grounds test. The appellant's position is that's simply not true, that immigration judges didn't ignore the law. They used their broad enforcement powers and their broad discretion to broadly interpret the law. And this is grounded in, as I said, reality. We submitted substantial evidence to the district court to show that this is the reality, this was the reality of practice. First of all, we had a sworn affidavit from an expert witness who was an attorney by the name of Thomas Hayne. And Mr. Hayne had extensive experience working for the government in immigration court, first as a prosecutor and then as an immigration lawyer. His affidavit is only as good as the cases that he cites or relies on. And if you trace those cases back, plus the other cases that you cite, they don't say that this is what would have happened, they just don't make it happen. Well, Your Honor, I believe that his affidavit is important for the fact that he describes how the parties involved in litigation were interpreting the law at the relevant time period. He cites two specific examples of clients who were similarly situated to Mr. Cardoza, who obtained discretionary relief or at least were allowed to argue for discretionary relief, even though their grounds for deportation were ag felonies or crimes of violence. This was bolstered in appellant pleadings with at least four other cases that it found stating the exact same thing, that we set forth not only the expert testimony of somebody who was in the trenches at the time telling us how it really worked, how judges were employing, interpreting the law, but we cited at least six. Did you cite any winners? I mean, I don't disagree that people could argue anything, but did you cite any winners? Well, Your Honor, I believe that of the six cases that I cited, that several of those were in fact granted discretionary relief, who were similarly situated. And that's specifically why we cited real, live individuals who made this claim and actually won. We have, and I would have to go back to my pleadings, but I'm referring to Juan Reynalds, Davila, Munoz. Now, these aren't published opinions. These are people who appeared in immigration court and presented their claims for 212C relief, even though they had ag felony crimes of violence or related matters that were treated as crimes of moral turpitude. So we have six specific examples of that and sworn testimony. So we know how these parties were proceeding at the time. They weren't ignoring the law. They were simply interpreting the law as it existed broadly. Now, allow me to posit a radical theory, Your Honor, that our legal system is populated with talented, intelligent individuals. Counsel, let me interrupt you for a moment. You said they interpreted broadly, but did they interpret it correctly? I think, Your Honor, if we, hindsight is 20-20, what happened is in 2000, well, let's say in 1994, would probably be the earliest example of a clear statement from this court in Comarenco that perhaps they were not interpreting that correctly or there was a clarification or some would say a limitation on the interpretation. But apparently the issue was not entirely clear because it kept coming up. The CFR was passed in 2004. Then in 2005, we had Blake and Brevia. And then in 2007, this court, in what it classified as an issue of first impression, decided the Abibi matter. And so, Your Honor, I think if we were going to immigration court now, there would be little doubt what the law says. But we're not. We have to go, according to St. Cyr, back to 1991. And at that time, the law was anything but clear. And the parties were indeed broadly interpreting it. So I guess the answer to your question is now we know that the courts would say that that interpretation is wrong. But at the time, the issue is whether Mr. Cardozo-Fuentes would have had a plausible argument for relief. And, of course, he would have. He only needed to look around and see all the other individuals that were obtaining the relief who were similarly situated. Counsel, as you know, we can affirm on any basis that appears in the record. And this record shows that Mr. Cardozo-Fuentes was possessing or carrying or using a weapon at the time of the second-degree robbery. Wouldn't that bar him from the relief under 212C at that time? No, Your Honor. I submit the issue regarding the weapon is a red herring here, first of all. The record is clear that the weapon at issue was a pellet gun. And a pellet gun is not a gun under federal law. So that would have been a clearly erroneous ground for deportation. Had Mr. Cardozo-Fuentes had counsel at the time, he or she could have brought that to the attention of the court. But Mr. Cardozo-Fuentes apparently wasn't familiar with the nuances of federal immigration law in order to raise that himself. But the gun issue, because it was a pellet gun, absolutely would not have precluded his claim. And I'm going to reserve my last approximate minute and a half for rebuttal if that's okay with the court. Certainly. Mr. Wu. Good morning, Your Honor. May it please the court, my name is Raymond Wu, and I represent the United States in this matter. It is not fundamental error or prejudicial if an immigration judge fails to inform a defendant about the discretionary waiver of inadmissibility under Section 212C when, as a matter of law, that defendant is not statutorily eligible for that relief. The defendant in this case was not statutorily eligible because his grounds of deportability, as charged by the United States, did not have a corresponding ground of exclusion under Section 212. These are two completely separate sections of the immigration law which deal with two completely separate issues. And this is, quite frankly, not a new area of the law because the Board of Immigration Appeals has essentially decided and considered it for the last 25 years. The first case that the Board of Immigration Appeals talked about this comparable grounds test occurred in 1978 in the matter of stamina where the court found if a ground of deportation is also a ground of inadmissibility, then Section 212C relief can be invoked in a deportation hearing. There are numerous published cases from the Board of Immigration Appeals that say exactly the same thing. And this court, in two published opinions prior to Abebe v. Mukesey, essentially found that reason to be persuasive. The first case was Cabasug v. the INS, a 1988 case in the Ninth Circuit, where the court found the petitioner to be ineligible for 212C relief because his ground of deportation, which dealt with the possession of a thought-off shotgun, did not have a similar exclusionary ground under Section 212A. Later, in 1994, as the defense pointed out in Comarenco v. INS, this court stated that the ground of deportation has to be substantially identical to the statutory ground of exclusion in order for the defendant to invoke Section 212C relief. Now, there are reasonable justifications as to why that is true. An alien who is being excluded, for example, could be excluded because he has caught some type of contagious disease in some foreign country, versus an alien who is here and they're currently being deported. They may have also caught a contagious disease, but it clearly would not be humanitarian to deport him for that basis. So, there's a clear delineation between the two schemes, and that is what this court recognized in this decision in Bevy v. Bukhesi, that there are no due process concerns for not applying a Section 212C relief waiver of inadmissibility to an alien who is undergoing a deportation proceeding. Now, the defendant is arguing that he had plausible grounds. I would submit to the court plausible grounds should be considered at the point when the defendant was being deported from the United States in 1998. But in order for this court to find plausible grounds, or, excuse me, if the court were to accept the defendant's argument that he has plausible grounds for relief, because the immigration court, I guess, in rare occasions, make mistakes of law, then this court would have to find plausibility and prejudice in almost every case. Unfortunately for this defendant, the law has clearly delineated, since 1978, between grounds of deportation and grounds of inadmissibility. And this is not a new area of law, as this court has clearly found in Bevy v. Bukhesi. I would simply ask that the court follow the reasoning in its decision in Gonzales-Valerio, which found that the defendant in that case did not have a plausible claim for relief because he was statutorily barred from receiving 212C relief. Similarly, in this case, this court should also find that the defendant does not have a plausible claim for relief because he was statutorily ineligible to apply for and to receive Section 212C relief. The defendant, in his reply brief, does in fact cite this court's recent decision in United States v. Muriel Luna, in footnote 6. That case suggests an additional layer, another layer that would pose a problem for this defendant, because this court recognized that a defendant in a deportation proceeding would have to apply for an adjustment of status to be eligible for a waiver of 212C relief in an inadmissibility context. But the defendant would also have to demonstrate that he had an immigrant visa immediately available to him in order to apply for that adjustment of status. And in this record, there is no showing of that whatsoever. If there are no other questions, the United States would respectfully request that this court affirm the District Court's denial of the defendant's collateral tax of his prior deportation. Thank you. Okay, thank you. Mr. Passon? Thank you. The government talked about the very clearly established line of demarcation between the grounds for deportation and the grounds for inadmissibility. The government's actually absolutely true. And it's a perfect example of the broad discretionary powers that the immigration courts have. Because what we know from case law and from a review of the record is that 212C, on the plain face of it, does not apply to folks in deportation proceedings. But we have had a situation where, essentially, the immigration court has been broadly interpreting that provision for some 60 years to say that, as a matter of fairness, it's appropriate to treat those in deportation proceedings the same as those in inadmissibility proceedings. Now, Abebe just held that that is no longer unconstitutional to make that distinction. But it's a perfect example of how immigration courts exercise their broad authority every day to do the right thing in immigration proceedings. And I would submit to this court, it has ample evidence in the record, that that was exactly what was happening at the relevant time period, 1991. And, therefore, Mr. Cardoza absolutely would have had plausible grounds for relief from deportation. We ask that you reverse the district court judge's decision. Thank you. Okay. Thank you, counsel, both of you, again, for being available by telephone. And the matter just argued will be submitted.
judges: Trager, Alarcon, Rymer